UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

---

| | | |
|---|---|---|
| **ANTONIA JOHNSON,** | : | **Civil Action** |
| Plaintiff, | : | 17 cv 783 |
| **V.** | : | |
| **JUSTIN COLE, JONATHAN LAMBE, ANDREW TOMER, and CRAIG DIXON** | : | **Jury Trial Requested** |
| Defendants. | : | May 12, 2017 |

---

## COMPLAINT

The plaintiff, by and through her attorneys, Herbert I. Mendelsohn, Esq., and John J. Radshaw, III, Esq., complains and alleges as follows:

### I.   INTRODUCTION

1. This is an action at law to redress the deprivation under color of law of civil rights secured to the plaintiff under the Fourth and Fourteenth Amendments of the United States Constitution, under Article First, Sections 7 and 9 of the Connecticut Constitution, and the common law of the State of Connecticut.

2. The plaintiff's injuries alleged herein were all the direct and proximate result of the unlawful, outrageous and physically abusive conduct engaged in by the defendant police officers of the New Haven Police Department assigned to the Narcotics Enforcement Unit (NEU) while executing an invalid and unlawful search warrant at the plaintiff's residence on or about March 11, 2016. The plaintiff alleges that

1

(a) the search warrant was issued and based upon allegations by the defendant police officers who, either intentionally or with reckless disregard for the truth, alleged such statements that the officers knew, or should have known, were inaccurate, misleading, and untruthful; (b) the search warrant was based upon an affidavit that was replete with misstatements of facts and/or omissions of fact that the affiant police officers knew, or should have known but for a reckless disregard for the truth were misstatements of facts and/or omissions of facts; (c) the application for the search warrant was based solely upon the statements, surveillance recordings, and observations by a confidential informant (CI) with an unknown history of reliability or veracity when such observations, statements and recordings were not independently corroborated in any way by the investigating officers.

3.  Taking into account the totality of the circumstances surrounding the application for that search warrant, the search of the plaintiff's apartment on or about March 11, 2016 by members of the New Haven Police Department violated the Fourth and Fourteenth Amendments of the United States Constitution, Article First, Sections 7 and 9 of the Connecticut Constitution as well as the common law of the State of Connecticut. Like the general warrants issued by the Crown in pre-revolution England and America described by James Otis, Jr., as "the worst instance of arbitrary power, the most destructive of English liberty, that was ever found in an English law book," warrants supported by untested and unreliable confidential informants are just as destructive as those warrants that gave rise to our Revolution.

## II. JURISDICTION AND VENUE

4. The jurisdiction of this Court is invoked under the provisions of 28 U.S.C. §§1331, 1343(a)(3) and 1367(a), as well as 42 U.S.C. §1983.

5. Venue lies in this District under the provisions of 28 U.S.C. §1391.

## III. THE PARTIES

6. The plaintiff, ANTONIA JOHNSON, is a citizen of the United States and resident of New Haven, Connecticut.

7. At all times mentioned herein, the defendants, JONATHAN LAMBE, JUSTIN COLE, and ANDREW TOMER, were members of the New Haven Department of Police Services ("NHPD") assigned to the Narcotics Enforcement Unit (NEU) of the Department.

8. Each and all of the acts of the said defendants were and are tortious, and were done in violation of state and federal law as well as constitutional principles, and were done under color or pretense of the constitution, statutes, laws, rules, regulations, customs, policies, and/or usages of the State of Connecticut and the United States of America.

9. At all times mentioned in this Complaint, the defendants Lambe, Cole and Tomer and Dixon acted jointly and in concert with each other. Each defendant had the duty and the opportunity to protect the plaintiff from the unlawful actions of the other defendant with whom he acted in concert, but each defendant failed and refused to perform such duty, thereby proximately causing the injuries herein complained of.

10. At all times mentioned in the Plaintiff's Complaint, the defendants were acting in their official capacities, they are sued only in their individual capacities

## IV.  THE FACTS

### A.  The Warrant

11.     On or about March 11, 2016, a Judge of the Connecticut Superior Court signed a search and seizure warrant for the premises known as Charles T. McQueeney Towers, 358 Orange Street, Apartment 522, New Haven, CT, and to seize the narcotic drugs and drug paraphernalia described in said warrant.

12.     Said warrant was applied for, and issued, in connection with a purported investigation by the NEU of illegal drug activity in the downtown section of the City of New Haven. As described in the affidavit for the search warrant, the target of the investigation was one Russell Douglas whom, the police claimed, was "known to sell narcotics out of Apartment 522 at 358 Orange Street, New Haven, CT." Affidavit, paragraph 6. That claim was based upon a telephone call that the CI purportedly made to a certain telephone number in the defendants' presence, which telephone number, the officers claimed, connected the CI to Russell Douglas. As further claimed by the defendants, without presenting any evidence of an independent investigation which would corroborate of the contents of the telephone conversation, the subject matter of the conversation, and the parties in it (besides the CI), the defendants further claimed that the purported Russell Douglas directed the CI to meet him at Apartment 522 at 358 Orange Street "in ten minutes". Affidavit, paragraph 9. Conspicuous in their absence in the affidavit were any statements of facts from the police officers establishing how the defendants had independently corroborated with any reliable degree of probability the contents and subject matter of that telephone conversation between the CI and Russell Douglas, or even that the CI was speaking with Russell Douglas in the first place. The

conspicuous absence and omission of these facts denied the reviewing court the opportunity to review and independently determine whether the affidavit supported the conclusion that probable cause existed to believe that the said Russell Douglas was, in fact, selling narcotics out of Apartment 522. All this allegation contained were conclusory statements without any supportive statements of fact to support that conclusion, thereby not allowing the reviewing court to fulfill its constitutional obligation and responsibility to independently review the facts alleged in the affidavit and render its own assessment that there was even arguable probable cause to issue the warrant to search Apartment 522 at 358 Orange Street, New Haven, CT.

13. As further described in the affidavit, the said investigation by the NHPD NEU was based entirely upon the services of an unknown, untested and unreliable Confidential Informant (CI). At no place in the affidavit did the defendants describe any prior experience with this particular CI or aver that this particular CI had, in the past, been used and had provided reliable information. In fact, the affidavit is entirely silent as to any representations of this CI's reliability or prior use; it is based solely and entirely on the statements and representations of an unknown, untested and unverified CI.

14. Also absent from the affidavit is any recitation of the facts describing how the defendants independently corroborated any of the CI's statements, knowledge, observations, or representations, in any one or more of the following respects:

    a. By failing to corroborate that the telephone number identified in paragraph 9 as belonging to Russell Douglas did, in fact, belong to, or was connected with, Russell Douglas.

    b.     By failing to corroborate that the individual that the CI spoke to on the telephone as described in paragraph 9 of the Affidavit was, in fact, Russell Douglas;

    c.     By simply stating in paragraphs 8 and 13 that the defendants obtained their information about the controlled buy by debriefing the CI and by reviewing the audio and video surveillance footage of the controlled buy that was obtained by the CI during the course of the controlled buy while not under any direct police supervision.

    d.     By failing to specify and describe in paragraphs 9 and 14 the specific facts that were gleaned from the debriefing of the CI and from the physical and audio and video surveillance, giving the reviewing court the misleading impression that the facts so alleged in the affidavit were from reliable, accurate, and verified recordings of audio and video surveillance by the CI.

    e.     By failing to accurately describe, or describe at all, the images that were visible on the video surveillance, including, in particular, the door leading to apartment 522, or whether any inference can be made that apartment 522 was involved at all.

    f.     By failing to describe the precise location of the door to apartment 522 in the apartment hallway in relation to other apartment doors in the hallway, e.g. that the door to apartment 522 was the last door on the left.

    g.     By failing to allege any facts to support the conclusion that the CI, in fact, knew Russell Douglas and that he could identify him by describing any

physical characteristics or measurements, such as height, weight, race, scarring, tattoos, etc; and

  h. By failing to allege any facts indicating that the defendants independently corroborated the CI's assertion that the said Russell Douglas was, in fact, selling narcotics out of Apartment 522 and that the said Russell Douglas was in some way connected with Apartment 522, instead relying solely upon the unsubstantiated representations of the CI of said occurrences.

15. In point of fact, the plaintiff, Antonia Johnson resided in Apartment 522, having been the sole tenant there under a signed lease agreement with the New Haven Housing Authority since 2008.

16. Ironically, over the years since almost the entire time that Antonia Johnson was a tenant residing in Apartment 522, she had complained to housing authority officials of the rampant drug use and drug trafficking in the said building and on the fifth floor in particular, and was on a waiting list to be relocated to other accommodations in other the New Haven Housing Authority apartment complexes.

17. Had the defendants undertook the most cursory and independent investigation, they would have determined that there was no narcotics being sold out of Apartment 522 as the CI had represented and as they had misrepresented to the court in their search warrant affidavit and would have most likely discovered and determined that such drug trafficking was, in fact, occurring elsewhere in the building at 358 Orange Street in general, and in other locations on the fifth floor of that building in particular.

**B.     The Search**

18.     On or about March 11. 2016, at approximately 9:00 a.m., the plaintiff, Antonia Johnson, was about to take a shower in her residence apartment 522 in the Charles T. McQueeney Towers, 358 Orange Street, New Haven, CT. The apartment number was identified by a placard affixed to the interior wall of the hallway on the right side of the door to the apartment. About a half hour before, Ms. Johnson had returned home after spending the night at her grandmother's home elsewhere in New Haven while her grandmother was in a local hospital for treatment. Her grandmother had asked Antonia to stay at the house while she was away to show that the house was occupied. Antonia had returned home to clean up, change her clothes, and attend to her own medical appointment that was scheduled for 10:00 a.m.

19.     At said date and time, with the shower water running and just about to step into the shower, Antonia became startled as she heard a loud banging at the door to the apartment. Suddenly, while still in the bathroom, and still naked to take her shower, a police officer, with his gun drawn and flashlight glaring, barged into the bathroom commanding that she out into the apartment. She tried to grab a towel to cover herself; the officer tried to take it away. Other police officers, all male, were there, guns drawn, flashlights glaring in front of her eyes. She was allowed to put some clothes on (albeit the clothes she had just taken off, but with no underwear), commanded to sit down on a chair in the living room, and had her hands cuffed in front of her.

20.     The police officers proceeded to, essentially, ransack her apartment. This outrageous, unjustified, and unnecessarily destructive conduct of these police officers

consisted of, but was not limited to, rifling through the plaintiff's drawers, throwing her clothing, including her intimate clothing, on the floor, rummaging through her personal papers, looking inside her closets and throwing the clothing that was neatly hanging there onto the floor, picking up and moving her mattress off its base, and punctured holes in a suitcase and bean bag seating chair, all the while shouting insults at her, telling her to "shut up", calling her a criminal, insisting that she knew certain individuals whose names they shouted at her, and threatening to take her "downtown" if they catch her again. Not finding what they were looking for, the officers released the handcuffs and left the apartment, but too late for Antonia to make her medical appointment. What the police officers did find, as described in the seizure inventory, was "One (1) piece of mail addressed to 'Antonia Johnson 358 Orange Street, Apartment 522, New Haven, CT' ".

21. The said conduct and accusations by the said police officers were hurled and directed at a quiet, 30 year old young woman who had no criminal record, had not engaged in any criminal activity, but had made several complaints to New Haven Housing Authority officials about such activity in the past, had just completed a curriculum in graphic design at a local community college, and whose home had been invaded by officers of the NHPD because of negligent, careless and reckless police investigatory work that had incorrectly identified Antonia Johnson's home as a place where illegal drugs were being sold, and which was unlawfully entered because of such grossly negligent and reckless police work.

22. As a result of this conduct of these police officers in the execution of the baseless search warrant described hereinabove, the New Haven Housing Authority

commenced eviction proceedings against the plaintiff with the filing of a pre-termination notice forcing her to hire a lawyer, all to her financial detriment, and attend a pre-termination conference which, to add insult to injury, affirmed the initial HANH decision to terminate her lease.

23. As a further result of the execution of the said search warrant, Antonia Johnson was caused to suffer, and continues to suffer, extreme mental and emotional distress including, but not limited to, fear, anguish, torment, embarrassment, degradation and an exacerbation of a pre-existing post traumatic stress disorder disability, as a result of which she continues to experience fear of being alone at night at her new residence such that relatives will often stay with her, or she will stay downstairs, until her husband comes home from his work responsibilities as a security guard in the early morning hours and she will keep a machete and a bat beside her bed at night.

**COUNT ONE**
**(42 U.S.C. §1983)**

1-23. Paragraphs 1 through 23 are repeated and realleged as if fully set forth herein.

24. As a result of the aforesaid acts and conduct of the NHPD police officers in their execution of the said search warrant, and acting in violation of rights guaranteed to Antonia Johnson under the Fourth Amendment and Fourteenth Amendments of the United States Constitution and the Connecticut Constitution as enforced through Sections 1983 and 1988 of Title 42 of the United States Code, Antonia Johnson was deprived of the rights, privileges and/or immunities secured by the Constitution and laws

of the United States of America and State of Connecticut in any one or more of the following respects:

    a.    Right to freedom from unlawful search and seizure;

    b.    Right to equal protection under the laws;

    c.    Right to freedom from unlawful retention of personal property;

    d.    Right to freedom from unlawful arrest and imprisonment;

    e.    Right to substantive due process;

    f.    Right to procedural due process;

    g.    Right to freedom from the use, and/or threatened use, of excessive force by the police;

    h.    Denial of liberty.

25.    As a result, the plaintiff sustained damages..

## COUNT TWO
### (Common Law Assault)

1-25.    Paragraphs 1 through 25 above are repeated and realleged as if fully set forth herein.

25.    By reason of the foregoing acts, circumstances and events in their execution of the said search warrant, the said police officers of the NHPD purposefully, and/or with knowledge to a substantial certainty that an apprehension of an imminent harmful and/or offensive physical contact would result, caused plaintiff to suffer an apprehension of an imminent harmful and/or offensive physical contact; and/or the said police officers purposefully, and/or with knowledge to a substantial certainty that a harmful and/or offensive physical contact would result, attempted to physically contact, and did contact, the plaintiff in a harmful and/or offensive manner and actually caused

11

the plaintiff to suffer an apprehension of an imminent harmful and/or offensive physical contact.

25. As a result, the plaintiff sustained damages.

## COUNT THREE

### (Common Law Battery)

1-25. Paragraphs 1 through 25 are repeated and realleged as if fully set forth herein.

26. By reason of the foregoing acts, circumstances and events, in their execution of the said search warrant, the said police officers of the NHPD purposefully, and/or with knowledge to a substantial certainty that a harmful and/or offensive physical contact would result, physically contacted the plaintiff in a harmful and/or offensive manner; and/or the said police officers purposefully, and/or with knowledge to a substantial certainty that an apprehension of an imminent, harmful and/or offensive physical contact would result, attempted to cause, and did cause, the plaintiff to suffer an apprehension of an imminent, harmful and/or offensive physical contact.

27. As a result of the foregoing, the plaintiff sustained damages.

## COUNT FOUR

### (Negligent Infliction of Emotional Distress)

1-28. Paragraphs 1 through 28 are repeated and realleged as if fully set forth herein.

29. The said conduct of the police officers in the execution of plaintiff's apartment pursuant to the said search warrant created an unreasonable risk of causing the plaintiff to suffer emotional distress, which she did, the plaintiff's emotional distress

was foreseeable in light of the circumstances surrounding the police officers' conduct, the plaintiff's emotional distress was severe enough such that it might result in illness or bodily harm to the plaintiff, which it did, and the police officers' conduct was the cause of the plaintiff's emotional distress.

30.   As a result of such distress, the plaintiff was compelled to expend sums of money, and is expected to continue to expend sums of money into the future, for psychological and mental health counseling and attention.

## COUNT FIVE

### (Intentional Infliction of Emotional Distress)

1-30.   Paragraphs 1 through 30 are repeated and realleged as if fully set forth herein.

31.   The said conduct of the police officers in their search of the plaintiff's apartment pursuant to the said search warrant was such that the officers either intended to inflict emotional distress upon the plaintiff or knew, or should have known, that emotional distress would likely result from this conduct, said conduct was extreme and outrageous, said conduct was the cause of the plaintiff's distress, and the emotional distress that was sustained by the plaintiff was severe, including the exacerbation of a pre-existing post traumatic stress disorder disability.

32.   As a result of such severe emotional distress, the plaintiff has been compelled to expend, and will be expected to expend into the future, sums of money for psychological and mental health counseling and attention.

## COUNT SIX

### (Connecticut State Constitution)

13

1-32.   Paragraphs 1 through 32 are repeated and realleged as if fully set forth herein.

31.   The said conduct of the police officers in their search of the plaintiff's apartment pursuant to the said search warrant violated Article First, Sections 7 and 9, of the Connecticut Constitution.

32.   As a result of the foregoing, the plaintiff sustained damages.


WHEREFORE, the plaintiff claims judgment against the defendants and each of them, jointly and severally, for compensatory damages, punitive damages, attorney fees and costs as follows:

**As to Count One:**

1.   Compensatory damages in an amount not yet fully ascertained, but not less than $1,000,000.00;

2.   Punitive damages in an amount not less than $1,000,000.00;

3.   Costs and reasonable attorneys' fees pursuant to 42 U.S.C. §1988; and

4.   Such other relief as the Court may deem appropriate.

**As to Count Two:**

1.   Compensatory damages in an amount not less than $1,000,000.00;

2.   Punitive damages, including costs and attorneys' fees; and

3.   Such other relief as the Court may deem appropriate.

**As to Count Three:**

1.   Compensatory damages in an amount not less than $1,000,000.00;

2.   Punitive damages, including costs and attorneys' fees; and

   3. Such other relief as the Court may deem appropriate.

**As to Count Four:**

   1. Compensatory damages within the jurisdiction of the Superior Court.

   2. Such other relief as the Court may deem appropriate.

**As to Count Five:**

   1. Compensatory damages within the jurisdiction of the Superior Court.

   2. Such other relief as the Court may deem appropriate

**As to Count Six:**

   1. Compensatory damages in an amount not less than $1,000,000.00;

   2. Punitive damages, including costs and attorneys' fees; and

   3. Such other relief as the Court may deem appropriate.

**THE PLAINTIFF DEMANDS A TRIAL BY JURY**

THE PLAINTIFF
ANTONIA JOHNSON

By: */s/ Herbert I. Mendelsohn*
Herbert I. Mendelsohn, Esq. (ct00249)
900 Chapel Street, Suite 620
New Haven, CT 06510
Tel: 203-777-9922
Fax: 203-777-9925
himlaw@aol.com

By ; */s/ John J. Radshaw III*
John J. Radshaw III, Esq. (ct19882)
900 Chapel Street, Suite 620
New Haven, CT 06510
Tel: 203-654-9695
Fax: 203-721-6182
jjr@jjr-esq.com